# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dominique Daron Ewing,<br><br>Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Respondents. | No. CV-13-02571-PHX-JAT (BSB)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Dominique Daron Ewing has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, raising one ground for relief. (Doc. 1.) Respondents argue that Petitioner waived habeas corpus review by pleading guilty. (Doc. 17 at 10-11.) Respondents alternatively argue that Petitioner's claim is procedurally defaulted and lacks merit. (Doc. 17 at 11-21.) Petitioner has not filed a reply in support of his Petition and the time to do so has passed. For the reasons below, the Court recommends that the Petition be denied.

**I.    Procedural Background**

   **A.    Charges, Guilty Plea, and Sentencing**

On November 10, 2010, Petitioner was indicted in the Maricopa County Superior Court on the following charges: (1) first-degree murder, a class one dangerous felony (Count One); (2) attempted armed robbery, a class three dangerous felony (Count Two); (3) kidnapping, a class two dangerous felony (Count Three); (4) aggravated assault, a class three dangerous felony (Count Four); and (5) burglary in the first-degree, a class

1  two dangerous felony (Count Five).  (Doc. 17, Ex. A.)  The State also alleged the
2  following aggravating circumstances: (1) the offenses involved the infliction or
3  threatened infliction of serious physical injury; (2) the offenses involved the use,
4  threatened use, or possession of a deadly weapon or dangerous instrument during the
5  commission of the crime (a gun); (3) the offenses involved the presence of an
6  accomplice; (4) Petitioner committed the offenses as consideration for the receipt, or in
7  the expectation of the receipt, of anything of pecuniary value; (5) the offenses caused
8  physical, emotional, or financial harm to the victim's immediate family; and (6) if the
9  jury convicted Petitioner of multiple counts not used to enhance his sentence, the State
10 alleged that the offenses resulted in multiple convictions.[1]  (Doc. 17, Ex. B.)

11       On August 29, 2011, Petitioner entered into a plea agreement with the State.
12 (Doc. 17, Ex. D.) The plea agreement provided that Petitioner would plead guilty to first-
13 degree murder, which carries a presumptive sentence of twenty-five years to life
14 imprisonment.  (*Id.* at 1.)  The plea agreement also stated that Petitioner would be
15 sentenced to the Arizona Department of Corrections and would pay restitution to the
16 victims in an amount up to $50,000.  (*Id.*)  In exchange for Petitioner's guilty plea, the
17 State agreed to dismiss the other charges against him.  (*Id.*)  Paragraph six of the plea
18 agreement provided that Petitioner waived "any and all motions, defenses, objections, or
19 requests which he has made or raised or could assert hereafter to the court's entry of
20 judgment against him and imposition of a sentence upon him consistent with this
21 agreement."  (*Id.* at 2.)  Paragraph eleven of the plea agreement stated that Petitioner
22 understood that by pleading guilty he was giving up "[his] right to remain silent, [his]
23 privilege against self-incrimination, [and] presumption of innocence."  (*Id.*)

24       On August 29, 2011, the court held a change-of-plea hearing.  (Doc. 17, Ex.  E.)
25 At the outset of the hearing, the court asked Petitioner's counsel whether he had any

26

27     [1] The charges were based on an incident that took place in November 2010.  The
28 facts are detailed in the presentence report.  (Doc. 17, Ex. C); *see State v. Salinas*, 887 P.2d 985, 987 (Ariz. 1994) (Under Arizona law, the evidence that supports a guilty plea may be derived from the presentence report).

1  reason to believe that Petitioner was not competent to enter a guilty plea. (*Id.* at 4.)
2  Defense counsel responded "no," and stated that Petitioner was "an intelligent young
3  man." (*Id.*) In response to the court's questions, Petitioner confirmed that he had not
4  taken any medication, consumed any alcohol, or used any drugs that interfered with his
5  ability to understand the proceedings. (*Id.*) He stated that he had discussed the plea
6  agreement with counsel before signing it, that he initialed each paragraph of plea
7  agreement, that he understood the plea agreement, that no promises had been made to
8  him other than those contained in the plea agreement, and that he was not forced or
9  threatened to enter the plea agreement. (*Id.* at 5-6, 12.) He also stated that counsel had
10 answered his questions about the plea agreement and that counsel had done "an excellent
11 job." (*Id.* at 5-6.)

12 The court recited the charge to which Petitioner was pleading guilty, advised
13 Petitioner of his sentencing exposure, and of the constitutional rights and appeal rights he
14 was waiving by pleading guilty. (*Id.* at 7-8, 10-12.) The court also explained that
15 Petitioner faced a sentence of twenty-five years to life imprisonment and that he would
16 serve "every day" of that sentence and that he was not eligible for any early release. (*Id.*
17 at 8-9.) Petitioner affirmed that he understood the charge and his potential sentence and
18 that he agreed to waive his rights and plead guilty. (*Id.* at 7-8, 12.) Petitioner's counsel
19 provided a factual basis for the guilty plea and Petitioner affirmed that he had committed
20 the acts contained in the factual basis. (*Id.* at 12-14.) The trial court found that Petitioner
21 entered the guilty plea knowingly, intelligently, and voluntarily and accepted the guilty
22 plea. (*Id.* at 14.)

23 The trial court held a sentencing hearing on October 14, 2011. (Doc. 17,
24 Exs. G, H.) During the sentencing hearing, defense counsel advised the court that
25 Petitioner had no prior criminal record, he had earned his GED, and that, before the
26 incident giving rise to his conviction, "he was in college" and had earned "two A's and
27 two B's in his semester." (Doc. 17, Ex. G. at 20.) Counsel also stated that Petitioner was
28 "intelligent." (*Id.* at 20.) The court sentenced Petitioner to twenty-five years to life

- 3 -

imprisonment, in accordance with the plea agreement. (*Id.* at 25; Doc. 17, Ex. H.) The court also ordered Petitioner to pay $5,763.94 in restitution. (Doc. 17, Ex. G. at 25.)

### B. Post-Conviction Proceeding

On December 29, 2011, Petitioner filed a notice of post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Doc. 17, Ex. I.) On January 9, 2012, the court appointed the Office of the Legal Advocate to represent Petitioner and ordered transcripts. (Doc. 17, Ex. J.) The Office of Legal the Advocate moved to withdraw based on a conflict and, on February 27, 2012, the court appointed Robert Gaffney as counsel for Petitioner. (Doc. 17, Exs. K, L.) On May 29, 2012, Petitioner's counsel filed a notice of completion of post-conviction review and advised the court that he was "unable to find a meritorious issue, including a claim of ineffective assistance of counsel, to justify the filing of a Petition in this matter." (Doc. 17, Ex. M.) The court granted Petitioner forty-five days to file a pro se petition for post-conviction relief. (Doc. 17, Ex. N.) Petitioner filed a petition for post-conviction relief on August 23, 2012. (Doc. 17, Exs. O, P, Q.)

In his petition, Petitioner asserted that trial counsel was ineffective because counsel lied to him after he refused to sign a plea agreement that provided for a sentence of twenty-five years to life imprisonment. (Doc. 17, Ex. Q.) Petitioner argued that trial counsel told him and his family members that he would only serve fifteen years' imprisonment because he would only have to serve eighty-five percent of his sentence. (*Id.*) He asserted that trial counsel told him that his plea agreement was more favorable than his co-defendant's plea agreement. (*Id.*) Petitioner asked the post-conviction court to correct his sentence. (*Id.*)

The State responded to the petition and argued that Petitioner failed to assert a colorable claim for ineffective assistance of counsel. (Doc. 17, Ex. R at 6) The State noted that Petitioner had not included an affidavit from trial counsel or any witness who knew about the alleged "secret deal" regarding his sentence under the plea agreement. (*Id.*) The State also noted that Petitioner's claims contradicted the statements he made

during the change-of-plea hearing, including his statement that no promises had been made to him other than the promises contained in the plea agreement, and the trial court's statement that Petitioner would serve twenty-five calendar years and would not be eligible for early release after serving only eighty-five percent of his sentence. (*Id.* at 6-7.)

Petitioner replied to the State's response and requested an evidentiary hearing. (Doc. 17, Ex. S.) In his reply, he reiterated that trial counsel told him he would only have to serve eighty-five percent of his sentence. (*Id.*) Petitioner attached an affidavit from his aunt stating that Petitioner's trial counsel had told her that he would not get a life sentence and that he would be eligible for parole. (*Id.*)

On November 27, 2012, the trial court denied Petitioner's request for an evidentiary hearing and dismissed the petition for post-conviction relief. (Doc. 17, Ex. T.) The court found that Petitioner's allegations regarding trial counsel's statements to him "were in direct conflict with what [Petitioner] himself said at the change of plea proceeding." (*Id*. at 2.) The court also found that Petitioner's allegations were "not supported by any independent verification or any supporting affidavit as required by Rule 32.5 [of the] Arizona Rules of Criminal Procedure." (*Id.*) The court further found that "[b]ecause there is no credible evidence of a secret deal, and [Petitioner] himself stated that he understood the sentence he now complains of, the Court does not believe that [Petitioner] can establish that his attorney was ineffective." (*Id.*) Petitioner did not petition the Arizona Court of Appeals for review of the denial of his petition for post-conviction relief. (Doc. 1 at 5.)

C. **Federal Petition for Writ of Habeas Corpus**

On December 17, 2013, Petitioner filed a petition for the writ of habeas corpus in this Court. (Doc. 1.) Petitioner asserts one ground for relief, which he describes as "[c]onfessions or statements illegally obtained making plea involuntary." (*Id.* at 6.) Respondents argue that Petitioner waived his claim by pleading guilty. (Doc. 17 at 10-

11.) Respondents alternatively argue that Petitioner's claim is procedurally defaulted and barred from federal habeas corpus review and that it lacks merit. (Doc. 17 at 11-21.)

## II. Petitioner's Guilty Plea Waived Review of Ground One

In Ground One, Petitioner argues that his confession was illegally obtained rendering his guilty plea involuntary. (Doc. 1 at 6.) To support that claim, Petitioner states that, "[i]n original recordings of my statements I asked for my lawyer invoking my *Miranda* rights.[2] Detectives told me I will get one when I get to county, thus resuming to interrogate me in violation of constitutional rights." (*Id.*) He alleges that he "sign[ed the] plea" because his statements to the detectives were incriminating. (*Id.*) Respondents contend that Petitioner waived this claim by pleading guilty because his assertion that a violation of his *Miranda* rights led to his plea is not properly considered a challenge to the voluntariness of his plea. (Doc. 17 at 11.)

A defendant's guilty plea limits the grounds upon which he can subsequently challenge his detention in a federal habeas corpus proceeding. *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Aside from a challenge to the voluntary and intelligent character of the plea itself, the entry of a guilty plea generally forecloses all collateral attacks with the exception of jurisdictional claims. *United States v. Broce*, 488 U.S. 563, 574 (1988); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (per curiam) (explaining that a guilty plea generally waives all claims of a constitutional nature occurring before the plea).

Petitioner asserts that his *Miranda* rights were violated because detectives continued to interrogate him after he requested a lawyer. (Doc. 1 at 6.) By entering a guilty plea, Petitioner waived his right to assert that his confession was involuntary or

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

otherwise violated *Miranda* because any alleged *Miranda* violation occurred before Petitioner entered his guilty plea. *See Page v. United States*, 968 U.S. 1221 (9th Cir. 1992) (concluding that a petitioner's guilty plea waived his right to assert that his confession and wavier of his *Miranda* rights was coerced).

Petitioner also argues that his guilty plea was induced by his confession, which was obtained in violation of *Miranda*. (Doc. 1 at 6.) Although this assertion relates to Petitioner's guilty plea, it "attacks the validity of his confession which was made prior to the hearing at which he entered his guilty plea." *Mayes v. Pickett*, 537 F.2d 1080, 1081 (9th Cir. 1976). When a defendant enters a guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. A petitioner "may not circumvent this rule by an operation that converts a collateral attack on a proceeding prior to the entry of his plea into a claim that the plea has been involuntarily coerced." *Mayes*, 537 F.2d at 1082. Petitioner's claim addresses the legality of his confession and Petitioner waived this claim by pleading guilty. *See Marrow v. United States*, 772 F.2d 525, 527 (9th Cir. 1985) (concluding that a claim that petitioner's confession was coerced addressed the legality of the confession, not the voluntariness of the guilty plea).

Therefore, Petitioner's claim asserted in Ground One is not cognizable in a federal habeas corpus petition because by pleading guilty Petitioner waived any challenges to his conviction based on alleged constitutional violations occurring before his plea. *See Tollett*, 411 U.S. at 267; *Bohn*, 956 F.2d at 209.

**III.   Ground One is Procedurally Barred**

Ordinarily, a state prisoner seeking federal habeas corpus relief must first exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally

1  appropriate manner.[3]  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  Even if Petitioner's guilty plea had not waived his claim asserted in Ground One, he did not properly exhaust this claim and it is procedurally barred from federal habeas corpus review.

On post-conviction review, Petitioner did not allege a *Miranda* violation or that his allegedly illegal confession induced his guilty plea.  (Doc. 17, Ex. Q.)  It would be futile for Petitioner to return to the state courts to try to exhaust this claim because a successive petition for post-conviction relief would be untimely, and because this claim could have been raised in Petitioner's prior post-conviction proceeding and so would be precluded from Rule 32 review.  *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006) ("As a general rule, when ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.") (internal quotation omitted).  Accordingly, Petitioner's claim asserted in Ground One is technically exhausted and procedurally barred from habeas corpus review.  *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)).

Petitioner does not allege, and has not established, a "fundamental miscarriage of justice" to overcome that bar.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (A federal court may review the merits of procedurally defaulted claims if a petitioner establishes "cause for the default and actual prejudice as a result of the allegation violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice.").  However, he alleges cause based on his learning disability, his age at the time of his conviction, his lack of legal assistance, and because

---

[3] In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

he never heard the original recording of his interrogation. (Doc. 1 at 6.) These allegations do not establish cause.

First, Petitioner does not describe his learning disability or explain how it prevented him from exhausting his claim in the state courts. *See Schneider v. McDaniel*, 674 F.3d 1144, 1153-55 (9th Cir. 2012) ("pro se petitioner's mental condition cannot serve as cause for a procedural default," particularly when the petitioner is "unable to demonstrate that a mental condition rendered [him] completely unable to comply with a state's procedures and he had no assistance"). Petitioner was able to file a timely post-conviction petition raising numerous claims, thus, the record does not support his allegation that a learning disability prevented him from raising the claim he asserts in this Petition. *See Schneider*, 674 F.3d at 1154.

Additionally, Petitioner's status as an inmate, age, lack of legal knowledge and assistance, and limited legal resources do not establish cause to excuse the procedural bar. *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause).

Finally, Petitioner alleges cause based on his assertion that he never heard the original recording of his interrogation. (Doc. 1 at 6.) Although he asserts that he did not hear the recording, he states that he knows what was said during the interrogation. (*Id.*) Thus, he has not explained why he was prevented from presenting his claim to the state courts. *See Davis v. Warden*, 2013 WL 4604737, at *2 (D. Nev. Aug. 27, 2013) ("Petitioner's lack of transcript of the sentencing hearing does not amount to cause to excuse the procedural default" of claims concerning the sentencing hearing, since the petitioner "was present" at the hearing and could have raised his claims in his first habeas petition).

Accordingly, Petitioner has not shown cause for his procedural default and the Court does not consider whether he can establish prejudice. *See Smith v. Murray*, 477

U.S. 527, 533 (1986) (stating that the court does not need to consider prejudice when the petitioner does not demonstrate cause).

### IV. Petitioner's Conclusory Allegations do not Warrant Relief

Finally, even if Petitioner's claim were properly before this Court on habeas corpus review, he would not be entitled to relief on that claim. Petitioner does not provide specific facts in support of his claim (Doc. 1 at 6), and "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir.1995) (stating that conclusory allegations with no reference to the record or other evidence do not warrant habeas relief).

### V. Conclusion

Because Petitioner waived his claim asserted in Ground One by pleading guilty and, alternatively, because that claim is procedurally barred and also consists of conclusory allegations that do not warrant habeas corpus relief, the Court recommends that the Petition for Writ of Habeas Corpus be denied.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment. The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 16th day of October, 2014.

Bridget S. Bade
United States Magistrate Judge